NICHOLAS ALBERTI, APPELLANT-RESPONDENT, v. CIVIL·
SERVICE COMMISSION, DEPARTMENT OF CIVIL SER-
VICE OF THE STATE OF NEW JERSEY AND CITY OF
PASSAIC, RESPONDENTS-APPELLANTS.

Argued June 3 and 4, and September 9, 1963—Decided
November 18, 1963.

*Mr. Martin Klughaupt* argued the cause for respondent-appellant City of Passaic.

*Mr. William L. Boyan,* Deputy Attorney General, argued the cause for respondent-appellant Civil Service Commission (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Jack B. Kirsten* argued the cause for appellant-respondent (*Messrs. Harrison & Jacobs,* attorneys; *Messrs. Feder & Rinzler,* of counsel; *Mr. Kirsten,* on the brief).

*Mr. Jack B. Kirsten* argued the cause for appellant.

*Mr. Herbert S. Alterman* argued the cause for respondent City of Passaic.

*Mr. William L. Boyan,* Deputy Attorney General, filed a statement in lieu of brief for respondent Civil Service Commission.

The opinion of the court was delivered by

HANEMAN, J.   Nicholas Alberti, a classified civil service employee of the City of Passaic (the City), employed in its Park Department, was dismissed by the City for conduct unbecoming a public employee, after a contested hearing.   He appealed to the Civil Service Commission, Department of Civil Service of the State of New Jersey (the Commission) which, after a *de novo* hearing, sustained the dismissal.   The decision of the Commission was rendered on March 5, 1962 and a copy was served upon Alberti on March 14, 1962. Alberti filed a notice of appeal with the Appellate Division on April 26, 1962, and served copies of notice thereof on the Commission and the Attorney General, as required by *R. R.* 4:88–8.   He failed, however, to serve such notice on the City or its attorney.   On August 27, 1962 Alberti moved before the Appellate Division for an order permitting him to prosecute

an appeal against and to serve notice thereof upon the City. The motion was denied on September 4, 1962 upon the ground that the time for appeal, as provided in *R. R.* 1:3–1(b), even if extended under *R. R.* 1:27B(d), had expired. On November 26, 1962, the Commission moved to dismiss the appeal for lack of a necessary party, *i. e.*, the City. The motion was denied without prejudice to its later being renewed. At the argument on that motion the Appellate Division suggested that Alberti apply for reconsideration of the order of September 4, 1962. Alberti did so move. The Appellate Division then granted Alberti leave to so join the City and to serve a notice of appeal as within time. 78 *N. J. Super.* 194 (*App. Div.* 1963).

This Court granted the City's and Commission's motion for leave to appeal from the Appellate Division's last mentioned order. This is cause A–144–62. After the argument thereof the Court held its decision and certified on its own motion Alberti's appeal on the merits pending in the Appellate Division. This is cause A–11–63.

█ The Appellate Division, relying upon *DeNike v. Board of Trustees, etc., Retirement System*, 62 *N. J. Super.* 280 (*App. Div.* 1960), concluded that the time limitation for appeals from a state agency decision or action provided by *R. R.* 1:3–1(b) was subject to enlargement under *R. R.* 4:88–15(c). The *DeNike* court rationalized as follows, at *p.* 291 of 62 *N. J. Super.*:

"Prior to the new rules, all prerogative writ cases were heard in the former Supreme Court. *Central R. R. Co. v. Neeld, supra* [26 *N. J.* 172] ; *Carls v. Civil Service Commission of New Jersey,* 17 *N. J.* 215, 218–221 (1955) ; *Ward v. Keenan,* 3 *N. J.* 298 (1949). Under our present practice, the Law Division and the Appellate Division each has jurisdiction over all such cases, no matter by what writs they would have been prosecuted at common law, the only difference being that if the defendant is a state agency, plaintiff should proceed in the Appellate Division, by appeal under *R. R.* 4:88–8 or for declaratory judgment under *R. R.* 4:88–10, while against all other agencies he must sue in the Law Division. In other words, regardless of the essential sameness of the claim, it is only the identity of the defendant that determines whether one division or the other has jurisdiction."

From this premise it concluded that *R. R.* 4:88–15(c) was applicable to actions under *R. R.* 4:88–8. Parenthetically, it is to be observed that on the appeal to this court the affirmance in *DeNike* was not upon the Appellate Division's thesis. *DeNike v. Board of Trustees, etc., Retirement System,* 34 *N. J.* 430 (1961).

The error in the conclusion that *R. R.* 4:88–15(c) is applicable to the time for taking appeals under *R. R.* 4:88–8 is demonstrated as follows: Under *Article* VI, *Section* V, *paragraph* 4 of the *New Jersey Constitution of* 1947, prerogative writs were superseded, and

> "* * * in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right, except in criminal causes where such review shall be discretionary."

In implementation of that directive, the Supreme Court provided as follows, *R. R.* 4:88–1:

> "Prerogative writs are superseded, and in lieu thereof, review, hearing and relief may be had as of right in the Superior Court in the manner provided by Rule 4:88. The term 'proceeding in lieu of prerogative writ' appearing in the statutes shall be taken to include actions, appeals and reviews provided for by this rule."

and *R. R.* 4:88–2:

> "Review, hearing and relief heretofore available by prerogative writs and not covered by Rules 4:88–7, or 4:88–8, or 4:88–10 shall be afforded by a civil action at law in the Law Division of the Superior Court."

Thus it is seen that all those actions which prior to 1948 had been undertaken by the various prerogative writs were consolidated into one type of action, thereby eliminating the technical distinctions between the different writs, and so simplifying procedure. The general substitute for the old writs is a proceeding in the Law Division, appealable to the Appellate Division. There were, however, excepted out of this gen-

eral class three specific types of actions, which involve (1) review of statutory proceedings before judges sitting as statutory agents, or proceedings before courts of limited jurisdiction, *R. R.* 4:88–7; (2) review of a final decision or action of a state administrative agency, *R. R.* 4:88–8; and (3) review of an administrative rule promulgated by a state administrative agency, *R. R.* 4:88–10. These causes of action are directed to be undertaken by direct appeal to or action in the Appellate Division.

*R. R.* 4:88–8(a) provides:

"Review of the final decision or action of any state administrative agency * * * shall be by appeal to the Appellate Division. Such appeal shall be instituted by filing a notice of appeal with the Appellate Division together with an affidavit or acknowledgment of service of copies of the notice of appeal upon the agency, the Attorney General or upon any person in his office designated by him in writing filed with the clerk of the superior court and all other parties to the proceeding or their attorneys."

After provision for filing the record of proceedings and a transcript of the testimony, *R. R.* 4:88–8 further reads:

"Thereafter the appeal shall proceed in the same manner as appeals from the trial divisions to the Appellate Division."

The procedure for perfecting an appeal under *R. R.* 4:88–8 differs from that provided for an appeal from the trial division in that in the former, the notice of appeal and proof of service thereof is filed with the Appellate Division, while in the latter the filing is with the trial court. *R. R.* 1:2–8. The time limitation for accomplishing this filing is, however, identical with the limitations for appeals from the trial division, except that in state agency appeals the time begins to run from the "date of the service of the decision * * * or of notice of the action taken." The period within which each of such appeals may be taken is set forth in *R. R.* 1:3–1(b), which reads:

"(b) 45 days—final judgments of all courts except municipal courts; judgments nisi in matrimonial matters; and *final state agency*

*decisions or actions*, except here the time shall run from the date of the service of the decision of the agency or of notice of the action taken, as the case may be." (Emphasis supplied)

Upon a clear showing of good cause and the absence of prejudice, this period may be enlarged for a period not exceeding 30 days, provided application therefor is made within said 30 days. *R. R.* 1:27B(d), *Grogan v. William J. Scully, Inc.,* 42 *N. J. Super.* 174 (*App. Div.* 1956), *Bayonne v. Dougherty,* 34 *N. J.* 240 (1961).

The express language of *R. R.* 1:3–1(b) makes it clear that that rule governs time limitation for appeals from "state agency decisions or actions" to the Appellate Division under *R. R.* 4:88–8 and appeals so undertaken must be perfected within the time there provided as possibly extended by *R. R.* 1:27B(d).

On the other hand, the time limitation for commencing actions in lieu of prerogative writs required to be taken in the Law Division is set forth in *R. R.* 4:88–15, which reads in part:

"(a) No proceedings for review, hearing and relief in lieu of prerogative writs shall be commenced, unless it shall be commenced within 45 days of the accrual of the right to such review, hearing or relief, except as provided in paragraph (b) of this rule, and except as provided in Rule 1:3–1.

(b) No proceeding in lieu of prerogative writ shall be commenced * * * [listing special time limits for designated types of actions]

(c) Where it is manifest that the interests of justice require, the court may enlarge the period of time provided for in paragraph (a) or (b) of this rule."

The very language of *Rules* 4:88–2 and 4:88–15, when read together with the companion *Rules* 4:88–8; 1:3–1(b), and 1:27B(d), makes it clear that *R. R.* 4:88–15(c) is inapplicable to proceedings directed to be taken in the Appellate Division by *R. R.* 4:88–8. The rules do not depart from the basic concept that there must be a discernible date of repose with respect to judicial or *quasi*-judicial determinations.

Having seen that the Appellate Division erred in its referral to *R. R.* 4:88–15(c) for granting Alberti a time exten-

sion to join the City, we come now to the question of whether the Appellate Division's action was justified on other grounds.

In order to perfect an appeal from the trial division, both service and filing of notice of appeal must be accomplished within the stated time. Failure to comply effectively forever bars an allegedly aggrieved party from seeking further relief. *In re Pfizer's Estate,* 6 *N. J.* 233 (1951). Similarly, this court has held that a *sine qua non* to an appeal from a state agency decision or action is a compliance with the procedural provisions of *R. R.* 4:88–8 within the 45 days set forth in *R. R.* 1:3–1(b), and where no application for extension of such time to perfect an appeal is made within the period provided by *R. R.* 1:27B(d), the Appellate Division loses jurisdiction. *Weaver v. Tp. of North Bergen,* 6 *N. J.* 475 (1951). This court has also held that service of notice of appeal from a state agency on less than all indispensable parties, and filing of said notice and proof of service within 45 days from the date of service of the agency decision with the Appellate Division, is a substantial compliance with the requirements of *R. R.* 4:88–8, and that the Appellate Division did not abuse its discretion in granting an appellant, making timely application under *R. R.* 1:27B(d), an extension of time for service upon the remaining necessary parties. *In re Erie Railroad System,* 19 *N. J.* 110 (1955).

From the foregoing it would appear on the face of the record that Alberti has not properly perfected his appeal, as he did not serve the City with a notice, of appeal and file proof of such service, together with said notice with the Appellate Division within 45 days of the service upon him of the Commission decision, nor did he apply within 30 days thereafter for an extension of time to accomplish those acts. It is to be noted, however, that he substantially complied with *R. R.* 4:88–8(a) by timely filing of the notice of appeal and proof of service upon the Commission and the Attorney General. The City admits that it had notice of such service and filing on May 1, 1962, 47 days after service of the decision of the Commission. Such knowledge was obtained when it was

served by the Attorney General with a notice of filing of the record. The City concedes that it was in no way prejudiced by the lack of service of the notice of appeal within the 45-day limitation.

■ Additionally, counsel for Alberti argues that the City is not an indispensable party to the appeal and that he initially concluded that it was therefore unnecessary to serve notice of appeal on it. He relies upon *Second Reformed Church v. Board of Adjustment,* 30 *N. J. Super.* 338 (*App. Div.* 1954). With this conclusion we do not agree. See *Hasbrouck Heights v. Division of Tax Appeals,* 48 *N. J. Super.* 328 (*App. Div.* 1958).

■ It is apparent, however, that an examination of *Second Reformed Church,* and *Hasbrouck Heights,* as well as the cases antedating 1948, concerning necessary parties to a prerogative writ action involving an appeal from the decision of an inferior tribunal, might lead to some confusion, and counsel could understandably be misled as to who are indispensable parties. See *State v. Petrolia,* 21 *N. J.* 453 (1956). It must be recognized that litigants are ordinarily bound by the mistaken procedural determinations of counsel. However, in *Martindell v. Martindell,* 21 *N. J.* 341, at *p.* 349 (1956), this court pointed out the possible exception to that general rule. The court there said:

> "It is true, as the plaintiff points out, that litigants are generally held bound by the mistaken as well as the sound procedural determinations of their counsel. *Karcher v. Philadelphia Fire and Marine Ins. Co.,* 19 *N. J.* 214, 216 (1955); *State v. Newman,* 36 *N. J. Super.* 506, 511 (*App. Div.* 1955). But the rule is not an absolute one and is to be applied rationally and with fair recognition of the fact that justice to the litigants is always the polestar. See *Devlin v. Surgent,* 18 *N. J.* 148, 153 (1955); *New Jersey Highway Authority v. Renner,* 18 *N. J.* 485, 495 (1955)."

In *Hodgson v. Applegate,* 31 *N. J.* 29 (1959), plaintiff's counsel erroneously concluded that he could preserve the right to appellate review of trial errors by including them in a motion to vacate a judgment and consequently permitted the

time for perfecting an appeal from the judgment to pass. Upon appeal from the denial of the motion to vacate the judgment, defendant argued that plaintiff's failure to perfect a timely appeal from the judgment barred defendant from advancing alleged trial errors and vested defendant with a right to that judgment, not thereafter subject to attack. This court said, at *p.* 43 of 31 *N. J.*:

> "Plaintiff argues that the Appellate Division's treatment of this appeal as one from the original judgment violated his vested right in that judgment and the principle of finality of judgments. The first answer is that, because the plaintiff's judgment was under attack 11 days before the expiration of the time for appeal, he never had a vested right. Such a right vests when the time for appeal from the judgment has passed, *In re Pfizer's Estate,* 6 *N. J.* 233 (1951), but not before. Even after that time, upon a proper showing under *R. R.* 4:62–2, such a right may be divested. See also *R. R.* 1:27B(d).
>
> The cases of *In re Pfizer's Estate, supra,* and *In re Nuese's Estate,* 15 *N. J.* 149 (1954), cited by the plaintiff, are not applicable. In those cases the time for appeal had expired before any matter had been presented to the court, and the court found no ambiguity in the rules.
>
> The principle of finality of judgments is one of repose. It dictates that litigation must eventually be ended and that at some point the prevailing party be allowed to rely confidently on the inviolability of his judgment. But it is not an absolute rule, and must be weighed in the balance with the equally salutary principle that justice should be done in every case. *Cf. Cammarata v. Public Service Co-Ordinated Transport,* 124 *N. J. L.* 38 (*E. & A.* 1940). The plaintiff was aware before the time for appeal had run that the defendants had placed his judgment in jeopardy. He had no right to rely on the inviolability of his judgment while the defendants' attack threatened it. Thus, the principle of finality is not impaired by considering the present case as though a timely appeal had been taken from the original judgment."

▉ We must view Alberti's conduct in the light of the foregoing. He did not utterly fail to comply with the rules governing the service and filing of appeal. He substantially complied with the rule mandate in both respects as to the Commission and the Attorney General. He failed only to serve timely notice of the appeal on the City and so failed to join a necessary party. It is admitted, as above noted, that the City had actual notice of the appeal on May 1, 1962, 47

days after Alberti was served with the decision of the Commission and was aware that the decision of the Commission was in jeopardy. The City has taken no action to its detriment in reliance upon the finality of the Commission's decision nor has it in any other way been prejudiced. The principle of repose arising from the finality of judgment is therefore not impaired by considering the present case as though timely appeal had been taken. Considering the peculiar facts and circumstances here present, we conceive that the interests of justice required the Appellate Division to grant Alberti's motion and deny the Commission's motion.

We come now to the merits of his appeal.

Alberti argues that the decision of the Commission should be reversed because (1) he was denied due process, (2) the Commission's findings of fact are inadequate, and (3) the determination of the Commission is unreasonable, arbitrary and capricious.

He states that he was denied due process in that the Commission allowed an amendment of the charges against him which raised issues not before the City on his original hearing. The facts in that connection are as follows:

On September 8, 1959 Alberti was served with a Preliminary Notice of Disciplinary Action by the Director of the Department of Parks and Public Property of the City of Passaic, which charged him with "conduct unbecoming an employee in public service" (Civil Service Rule 59(g)), and advised him that he was "suspended pending formulation of charges and hearing thereof." An amended Notice of Hearing was served on November 13, 1959, again alleging a violation of Civil Service Rule 59 and further specifying the acts of misconduct. Two charges were then made, to wit:

(1) "You did engage in betting and wagering on horse races and other games for large sums of money during 1954, 1955 and 1956."

(2) "On November 10, 1959, you were convicted by a Jury in the Passaic County Court on an Indictment charging you with conspiracy to fix a gambling charge."

A hearing held before Joseph Stanek, Passaic Director of the Department of Parks and Public Property, resulted in Alberti's dismissal.

He appealed to the Commission and hearing was commenced before Commissioner Edward Gilroy on September 21, 1961. At the outset of the hearing, the City moved to vacate the charge involving the conspiracy indictment, as Alberti's conviction thereunder had been reversed by the Appellate Division, and to further particularize the all-inclusive charge of unbecoming conduct, namely:

(1) neglect of duty (Rule 59(a)).

(2) absence without leave and failure to report after authorized leave has expired and where such leave has been disapproved or revoked by the appointing authorities. (Rule 59(b)).

Defense counsel objected and pleaded surprise. The Commissioner, over this objection, allowed the motion, with the understanding that the charges so specified were all related to Alberti's gambling for large sums of money and his ability to discharge his duties of employment, and were limited to the years 1954 to 1956 inclusive. Defense counsel thereupon requested that the hearing be delayed until his client arrived, which request was granted. The hearing was adjourned after the City presented its case, and counsel for Alberti was granted until October 23, 1961 to prepare his case. On that date the hearing was completed.

The answer to Alberti's due process argument is found in the fact that he was not confronted before the Commission with additional charges. The motion by the City did not seek to incorporate new charges, not urged at the original hearing before the City, but rather sought to explain the charges there made and tried in greater detail. The additions did not substantially change the original grounds for discharge. To the contrary, they were related directly to and within the framework of Alberti's gambling activities during the years 1954 to 1956, out of which grew the reasons for his discharge from employment. They were so limited by the Commission when

granting the City's application. Additionally, Alberti's counsel was granted an adjournment of approximately one month to prepare his defense. He was fully aware of the charge which he was required to meet and accorded adequate time to prepare a defense. We find no merit in Alberti's argument.

The other two remaining alleged grounds for reversal are to a large extent intertwined. A reading of the record discloses that there was ample basis for the Commission's determination, and that its action was not unreasonable, arbitrary or capricious. Its factual findings were adequate and the penalty imposed was reasonable under all of the facts and circumstances.

The order of the Appellate Division and the judgment of the Civil Service Commission are affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR, HALL and HANEMAN—5.

*For reversal*—None.